```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


STEVEN A. CAPIZZI,

            Plaintiff,

     vs.                              Civil Action 2:14-cv-1063
                                      Judge Marbley
                                      Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
```

## REPORT AND RECOMMENDATION

### I. Background

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.[1] This matter is before the Court for consideration of *Plaintiff Steven A. Capizzi's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 11, and the *Defendant's Memorandum in Opposition* ("*Commissioner's Response*"), Doc. No. 12.  Plaintiff has not filed a reply.

Plaintiff Steven A. Capizzi filed his application for benefits on April 28, 2011, alleging that he has been disabled since April 8, 2011.  *PAGEID* 42, 156-59.  The claim was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

---

[1] Plaintiff filed an application for supplemental security income on April 28, 2011.  *PAGEID* 129, 160-64.  This claim was denied on May 19, 2011, *PAGEID* 129, and plaintiff did not pursue that claim.

An administrative hearing was held on February 13, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Carl Hartung, who testified as a vocational expert. *PAGEID* 70. In a decision dated March 20, 2013, the administrative law judge concluded that plaintiff was not disabled from April 8, 2011, through the date of the administrative decision. *PAGEID* 42-53. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 6, 2014. *PAGEID* 29-31.

Plaintiff was 48 years of age on the date of the administrative decision. *See PAGEID* 53, 158. He has at least a high school education, is able to communicate in English, and has past relevant work as a tree trimmer. *PAGEID* 51. Plaintiff is insured for disability insurance purposes through December 31, 2015. *PAGEID* 44. He has not engaged in substantial gainful activity since April 8, 2011. *Id*.

## II. Evidence of Record[2]

Plaintiff reported to the emergency department at Mount Carmel East Hospital on April 9 and April 16, 2011, after a sudden onset of pain, tingling, weakness, and spasms in his right arm, posterior neck, right side of his back, and right leg while working as an arborist. *PAGEID* 221-22, 239-40, 285. Plaintiff was diagnosed with cervical radiculopathy and discharged with prescriptions for Norco and Naprosyn. *Id*. Plaintiff again reported to the emergency department

---

[2] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*, which challenges the administrative law judge's evaluation of plaintiff's back impairments.

2

on April 24, 2011, with complaints of bowel and bladder incontinence and difficulty with raising his head. *PAGEID* 284-85. On examination, plaintiff had equal and symmetric sensation and strength in the upper and lower extremities. *PAGEID* 286. He had globally diminished deep tendon reflexes of 1+. *Id*. MRIs of the cervical and thoracic spine revealed abnormalities related to a possible cyst or tumor. *PAGEID* 253. There were disk osteophyte complexes at C5-6 and C6-7 causing bilateral foraminal narrowing at both levels and mild central canal stenosis at C6-7. *Id*. An MRI of the lumbar spine revealed mild multilevel degenerative disk disease of the lumbar spine. *PAGEID* 255. There were no large disk protrusions nor was there central canal or foraminal stenosis. *Id*. Plaintiff was diagnosed with lumbrosacral radiculopathy and referred to James H. Uselman, M.D., a neurosurgeon. *PAGEID* 286-88.

Plaintiff was evaluated by Dr. Uselman on April 28, 2011. *PAGEID* 336-37. On September 7, 2011, Dr. Uselman performed a T1, T2, and T3 laminectomy for removal of an arachnoid cyst. *PAGEID* 300. Plaintiff was hospitalized in connection with the surgery from September 7 through September 10, 2011. *Id*. On September 8, 2011, plaintiff complained of left leg numbness, but had no other complaints and was described as "doing well." *Id*. An MRI showed post-surgical changes but no evidence of decompression. *Id*. Plaintiff had no new complaints on September 9, 2011, and "was doing well." *Id*. On September 10, 2011, plaintiff was "ambulating well" and was discharged to his home in stable condition. *Id*.

Dr. Uselman saw plaintiff on September 22, 2011, *PAGEID* 340, and noted that "the cyst was causing compression of the central canal, which was causing dilation within the cord above it, and with removal of the cyst this all decompressed itself." *Id*. According to Dr. Uselman, "[t]he news is all good." *Id*. On examination, plaintiff's balance was better, but he did "have some persistent numbness in the left thigh and upper torso." *Id*.

An October 26, 2011 MRI of the thoracic spine revealed normal alignment of the thoracic spine and normal spinal canal diameter. *PAGEID* 313. Previously seen signal changes in the upper thoracic cord continued to decrease. *Id*. There was also a large fluid collection in the soft tissues of the upper back posteriorly, with extensive surrounding soft tissue enhancement extending to the laminectomy site. *Id*. Plaintiff underwent a guided aspiration of fluid collection in the thoracic spine at the site of the laminectomy on November 1, 2011. *PAGEID* 335.

A November 16, 2011 MRI of the thoracic spine revealed changes related to some degree of myelomalacia. *PAGEID* 318. There was some increased signal intensity centrally in the cord at T3, but the extent of the abnormality was unchanged since the previous MRI and there was no longer any suggestion of fluid collection. *PAGEID* 318, 341.

On November 22, 2011, Dr. Uselman noted that plaintiff "continues to have some discomfort" and was "actually improving." *PAGEID* 341. Plaintiff's incision was well healed although he continued to experience some tingling in the left leg. *Id*. Dr. Uselman

recommended physical therapy and prescribed Vicodin ES "to help with some of the discomfort." *Id*.

Plaintiff treated with James P. Mackessy, M.D., from October 24, 2011 through December 19, 2011. *PAGEID* 342. On December 19, 2011, Dr. Mackessy opined that plaintiff had "very mild weakness to both arms," a "mild left leg limp," and "cervical rotation to 80° bilaterally." *PAGEID* 343. Dr. Mackessy also opined that plaintiff had no ability to perform fine and gross manipulation. *Id*.

On January 26, 2012, Dr. Uselman opined that plaintiff was "completely disabled from his job as climbing in trees and cutting down trees." *PAGEID* 344. According to Dr. Uselman, plaintiff did not have normal balance or normal control of his legs. *Id*.

Plaintiff reported to Dr. Uselman on February 23, 2012, with complaints of persistent burning between his shoulder blades and issues with balance and his left leg. *PAGEID* 360. Plaintiff was no longer taking pain medication. *Id*. An MRI showed "only postoperative changes" and there was no "recurrence of his cyst." *Id*. Plaintiff's "cord actually look[ed] quite good." *PAGEID* 360; 418.

Plaintiff reported to the emergency department on April 25, 2012, with reports of severe pain from the back of his shoulder down toward his right elbow. *PAGEID* 446. Plaintiff was prescribed pain medication and was advised to follow-up with Dr. Uselman. *PAGEID* 447.

Plaintiff was evaluated by Tom Reynolds, M.D., a rehabilitation specialist, on March 13, 2012. Dr. Reynolds noted that plaintiff had a tight Achilles tendon, decreased motion in the left ankle and foot,

5

and difficulty walking with coordination. *PAGEID* 409. Plaintiff had ataxia and incoordination of the left lower limb, normal strength to manual muscle testing in the left lower limb, and an abnormal and unbalanced gait. *PAGEID* 411. On November 16, 2012, Dr. Reynolds noted that plaintiff was working four days per week "hauling around a wheelbarrow full of mulch." *PAGEID* 407-08. Plaintiff was taking no pain medication and, although he reported soreness and discomfort, he "had been doing pretty well" and had not followed up for his postop MRI. *Id*. On examination, plaintiff's gait was stable and his reflexes were 1+ and equal in both upper and lower limbs. *Id*. He had negative Hoffmann sign, straight leg raises were negative bilaterally, and he had normal range of motion in the cervical spine and shoulders. *Id*.

Plaintiff treated with Sarah E. Blake, M.D., at Capital City Pain Care on December 13, 2012. *PAGEID* 451-52. Plaintiff reported neck and shoulder pain, burning pain on the left side of his body, and weakness in his left hand. *Id*. Plaintiff described his pain as sharp, burning, stabbing, dull, constant, aching, and throbbing; he rated his pain as a 10 on a 10-point scale. *Id*. Dr. Blake recommended non-narcotic pain medication, but plaintiff refused, citing fear of side effects. *Id*. Plaintiff continued to report shoulder and back pain through March 2013. *PAGEID* 453-61.

William Bolz, M.D., reviewed the record on June 26, 2011, and completed a residual functional capacity assessment. *PAGEID* 109-11. According to Dr. Bolz, plaintiff could lift and/or carry 20 pounds

6

occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. *PAGEID* 109. Plaintiff could frequently climb ramps/stairs, balance, kneel, and crouch; occasionally stoop and crawl; and never climb ladders/ropes/scaffolds. *PAGEID* 109-10. Dr. Bolz further opined that plaintiff should avoid all exposure to unprotected heights. *PAGEID* 110-11.

Gerald Klyop, M.D., reviewed the record on January 5, 2012, and affirmed Dr. Bolz's assessment. *PAGEID* 122-24.

**III. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease and degenerative joint disease. *PAGEID* 44. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders/ropes/scaffolds, must avoid hazards such as dangerous machinery and unprotected heights, and can only occasionally stoop, kneel, crouch, and crawl." *PAGEID* 48-49. Although this RFC precludes the performance of plaintiff's past relevant work as a tree trimmer, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as hand packager, vehicle cleaner, and janitorial cleaner. *PAGEID* 51-52. Accordingly,

7

the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 8, 2011, through the date of the administrative decision.  *PAGEID* 53.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff argues, first, that the administrative law judge erred in finding that plaintiff did not have an impairment or combination of impairments that meet or medically equal a listed impairment. *Statement of Errors*, pp. 8-10.

"At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). The claimant bears the burden of proof at step three to establish that the criteria of a listing are met or that his impairment is the medical equivalent of a listing. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An administrative law judge's evaluation of the listings must contain sufficient analysis to allow for meaningful judicial review. *Reynolds*, 424 F. App'x at 415-16.

In the case presently before the Court, the administrative law judge found that plaintiff "does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *PAGEID* 48. In making this determination, the administrative law judge expressly considered Listings 1.02A and 1.04A:

> The claimant had good results from the surgery to remove his spinal cyst. Although he has had some balance issues, there are no neurological deficits, no weakness, and negative straight leg raising. Most recently his gait is reported as stable. There is also no objective evidence of difficulty using the hands. Additionally, the claimant has

9

> had foot pain, but this has not significantly interfered with his ability to walk. Nor is there any gross anatomical deformity or x-ray evidence of joint space narrowing, bony destruction, or ankylosis. Therefore the criteria of Listings 1.02A and 1.04A are not met or equaled.

*Id*.

Plaintiff argues that the administrative law judge erred in evaluating Listings 1.02A and 1.04A because the evaluation was brief, there were no citations to the medical record, and the administrative law judge failed to obtain a medical expert opinion. *Statement of Errors*, pp. 8-10. Plaintiff's arguments are not well taken. First, plaintiff has cited no authority for the proposition that the administrative law judge's analysis of the listings must be lengthy or contain citations to the record. Second, the administrative law judge's evaluation of the evidence and determination that plaintiff does not meet Listings 1.02A and 1.04A is supported by substantial evidence.

Listing 1.02A requires, under appropriate circumstances, a finding of disability based on a major dysfunction of a joint:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02. The administrative law judge found that plaintiff's gait was most recently reported as stable, plaintiff's foot pain did not significantly interfered with his ability to walk, and there was no gross anatomical deformity or x-ray evidence of joint space narrowing, bony destruction, or ankylosis. These findings are supported by substantial evidence.

MRIs of the cervical and thoracic spine, taken on April 24, 2011, revealed disk osteophyte complexes at C5-6 and C6-7 causing bilateral foraminal narrowing at both levels and mild central canal stenosis at C6-7. *PAGEID* 253. However, an MRI of the lumbar spine revealed no central canal or foraminal stenosis, *PAGEID* 255, and MRIs taken after plaintiff's surgery revealed "normal spinal canal diameter," *PAGEID* 313 (October 26, 2011), and "only postoperative changes" with no "recurrence of his cyst." *PAGEID* 360 (February 23, 2012). By February 2012, plaintiff's "cord actually look[ed] quite good." *Id*. Moreover, although plaintiff has been treated for foot pain, *PAGEID* 355-58, and experienced some issues with balance after his back surgery, *PAGEID* 340, 344, 360, 411, his gait was normal in February and March 2013. *PAGEID* 455, 457. Accordingly, the Court finds no error in the administrative law judge's evaluation of Listing 1.02A.

Listing 1.04A requires, under appropriate circumstances, a finding of disability based on a disorder of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

11

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04A.  The administrative law judge found that plaintiff had experienced good results from the surgery to remove his spinal cyst; straight leg raising was negative.  *PAGEID* 48.  These findings are supported by substantial evidence.  On September 22, 2011, Dr. Uselman noted that "the cyst was causing compression of the central canal, which was causing dilation within the cord above it, and with removal of the cyst this all decompressed itself."  *PAGEID* 340.  According to Dr. Uselman, "[t]he news is all good."  *Id*.  An October 26, 2011 MRI of the thoracic spine revealed normal alignment and normal spinal canal diameter; the previously seen signal changes in the upper thoracic cord continued to decrease.  *PAGEID* 313.  On November 22, 2011, Dr. Uselman noted that plaintiff was "actually improving," despite "some [continued] discomfort."  *PAGEID* 341.  By February 2012, plaintiff was no longer taking pain medication, an MRI showed "only postoperative changes," there was no "recurrence of his cyst," and plaintiff's "cord actually look[ed] quite good."  *PAGEID* 360.  By November 2012, plaintiff reported that he was back at work four days a week "hauling around a wheelbarrow full of mulch."  *PAGEID* 407-08.  Straight leg raises were negative bilaterally.  *Id.*  The Court therefore finds no error in the administrative law judge's evaluation of Listing 1.04A.

Plaintiff next argues that the administrative law judge failed to consider whether plaintiff's back impairment medically equaled Listing 1.04C.  *Statement of Errors*, pp. 8-10.  Plaintiff does not argue that Listing 1.04C was met; plaintiff argues that the administrative law judge was required to expressly address whether Listing 1.04C was equaled because the issue was raised at the administrative hearing.  Plaintiff also argues that the administrative law judge should have obtained an expert medical opinion to determine whether Listing 1.04C was equaled, and he argues that the administrative law judge failed to cite and consider "a variety of findings and exam signs throughout the record that were at odds with the ALJ's conclusions."  *Id*. at pp. 11-12.  According to plaintiff, the administrative law judge "failed to account for" the "finding [that] was the basis for potentially equaling Listing 1.04C[:]" "the presence of cervical spinal stenosis, identified as multilevel foraminal narrowing as well as central canal stenosis at C6-C7, on an MRI taken April 25, 2011."  *Statement of Errors*, p. 12.  Plaintiff's arguments are not well taken.

Listing 1.04C requires, under appropriate circumstances, a finding of disability based on a disorder of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> . . .
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and

13

>  weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04C. Medical equivalence can be established when findings related to the plaintiff's impairments are "at least of equal medical significance" to the criteria of a listing. *See* 20 C.F.R. § 404.1526(b). The administrative law judge did not expressly consider whether Listing 1.04C was met or equaled. As discussed *supra*, the administrative evaluated Listing 1.02A and 1.04A and found that plaintiff "does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *PAGEID* 48.

Plaintiff apparently concedes that Listing 1.04C has not been met. *See Statement of Errors*, pp. 6-12. Plaintiff argues, however, that Listing 1.04C was equaled because MRIs of the cervical and thoracic spine taken prior to his back surgery revealed bilateral foraminal narrowing at C5-6 and C6-7 and mild central canal stenosis at C6-7. *PAGEID* 253. This evidence of cervical spinal stenosis is not "at least of equal medical significance" to the criteria of Listing 1.04C. First, there is no evidence in the record that cervical spinal stenosis resulted in pseudoclaudication or weakness. Second, as discussed *supra*, plaintiff's post-surgery MRIs revealed normal alignment of the thoracic spine and normal spinal canal diameter, previously seen signal changes in the upper thoracic cord continued to decrease, and "only postoperative changes" were present. *PAGEID* 313, 360. Moreover, there is no evidence that plaintiff was

unable to ambulate effectively.  Although the administrative law judge did not expressly state that the requirements of Listing 1.04C were not equaled, his findings support his conclusion that no Listing, including Listing 1.04C, was equaled.  The administrative law found that plaintiff "had good results from the surgery to remove his spinal cyst," that plaintiff's pain "has not significantly interfered with his ability to walk," and that plaintiff did not have weakness or need an ambulatory aid.  *PAGEID* 48-49.  These findings are supported by substantial evidence and are inconsistent with a determination that Listing 1.04C was equaled.  The Court therefore finds that the administrative law judge's failure to expressly state that Listing 1.04C was not equaled is not reversible error.

Plaintiff also cites to the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX") and argues that the administrative law judge must obtain the opinion of a medical expert when considering whether an individual's impairments equal a listing.  *Statement of Errors*, p. 7.  The HALLEX states that an administrative law judge must obtain a medical expert's opinion when "considering a finding that the claimant's impairment(s) medically equals a medical listing."  HALLEX I-2-5-34, 1994 WL 637370 (Sept. 28, 2005).  However, the United States Court of Appeals for the Sixth Circuit has held that the HALLEX is not binding authority.  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).  An administrative law judge "has discretion to determine whether further evidence, such as additional testing or expert testimony, is

15

necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917).  The record reflects sufficient evidence of plaintiff's impairments and the effects of those impairments on plaintiff's residual functional capacity.  It cannot be said that the administrative law judge relied on his own lay opinion in evaluating the evidence.  It follows that the administrative law judge did not err in failing to secure the testimony of a medical expert in this regard.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 30, 2015                                                        *s/Norah McCann King*
                                                                      Norah M<sup>c</sup>Cann King
                                                                    United States Magistrate Judge