**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STEVEN CAPIZZI

          **Plaintiff,**

      **v.**

Carolyn W. Colvin,
COMMISSIONER OF
SOCIAL SECURITY,

          **Defendant.**

      :
      :
      :
      :
      :
      :
      :
      :
      :
      :

**Civil Action No.: 2:14-cv-1063**

**JUDGE ALGENON L. MARBLEY**

**Magistrate Judge King**

## OPINION & ORDER

This matter is before the Court on Plaintiff's Objection, (Doc. 14), to the Magistrate Judge's January 30, 2015 Report and Recommendation, (Doc. 13), recommending that the Court override Plaintiff's Statement of Errors, (Doc. 11), and enter judgment in favor of the Commissioner.  Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objection is hereby **SUSTAINED** and the Court **OVERTURNS** the Magistrate Judge's Report and Recommendation.

### I. BACKGROUND

Plaintiff Steven A. Capizzi filed his application for benefits on April 28, 2011, alleging that he had been disabled since April 8, 2011 due to impairments that consist of degenerative disk disease and degenerative joint disease.  (Doc. 13).  The claim was denied initially and upon reconsideration (*Id.*) and after a hearing on February 2013, the Administrative Law Judge ("ALJ") issued a decision concluding that the Plaintiff was not disabled from April 8, 2011, through the date of the administrative decision.  (*Id.* at 2).  When the Appeals Council declined review on June 6, 2014, the ALJ's decision became final.  (*Id.*).

1

## A. FACTUAL BACKGROUND

### 1. Evidence of Record Regarding Plaintiff's Back Impairments

On April 9, 2011, Plaintiff reported to the emergency department of Mount Carmel with pain, tingling, weakness, and spasms in his right arm, posterior neck, and right leg. (*Id*). Plaintiff was diagnosed with cervical radiculopathy. (*Id.*). Plaintiff returned to the emergency room on April 13, 2011 having injured his right arm picking up heavy bags of leaves and the diagnosis was the same. (*Id*.). An MRI of his lumbar spine on April 24, 2011 revealed mild, multilevel, degenerative disk disease, but no stenosis or large disk protrusions. (*Id*. at 17).

On September 7, 2011, Dr. James H. Uselman, M.D., a neurosurgeon, performed a T1, T2, and T3 laminectomy for removal of an arachnoid cyst. (*Id*.). On September 8, 2011, Plaintiff complained of left leg numbness, but was described as "doing well." (Doc. 13). An MRI showed post-surgical changes, but there was no evidence of decompression. He was discharged to his home in stable condition on September 10, 2011 after the doctor noted that he was "ambulating well." (*Id*.).

On September 22, 2011, Dr. Uselman saw Plaintiff and noted that "the cyst was causing compression of the central canal…and with removal of the cyst this all decompressed itself." (*Id.*). Uselman said that "the news was all good" even though Plaintiff had "some persistent numbness in the left thigh and upper torso." (*Id.*).

A repeat MRI of the thoracic spine obtained on October 26, 2011 showed post-surgical changes with a decrease in the previously seen signal changes; however, there was a large fluid collection in the soft tissues of the upper back. (Doc. 10). On November 16, 2011, another MRI of the thoracic spine demonstrated changes related to some degree of myelomalacia, i.e., a softening of the spinal cord; however, there was no reoccurrence of any fluid collection. (*Id.*).

2

James P. Mackessy, M.D. treated Plaintiff from October 24, 2011 through December 19, 2011.  (Doc. 13).  Dr. Mackessy opined that Plaintiff had a "very mild weakness to both arms," a "mild left leg limp," and "cervical rotation to 80 degrees bilaterally." (*Id.*). He also had no ability to perform fine and gross manipulation.  (*Id.*).

On January 26, 2012, Dr. Uselman opined that Plaintiff was "completely disabled from his job as climbing in trees and cutting down trees" because he did not have normal balance or control of his legs (*Id.*).  On February 23, 2012, after Plaintiff reported to Dr. Uselman with complaints of persistent burning between his shoulder blades and issues with balance, a MRI showed that there was no "recurrence of his cyst" and that Plaintiff's "cord actually looked quite good."  (*Id.*).

Tom Reynolds, M.D., a physiatrist, evaluated Plaintiff on March 13, 2012 and noted that he had a tight Achilles tendon, decreased motion in the left ankle and foot, and difficulty walking with coordination.  (*Id.* at 5-6).

On November 16, 2012, Dr. Reynolds noted that Plaintiff was working four days per week, "hauling around a wheelbarrow full of mulch" and he was taking no pain medication although he reported soreness and discomfort.  (Id. at 6).  He "had been doing pretty well" and had not followed up for his post-op MRI.  His gait was stable and his reflexes were 1+ and equal in both upper and lower limbs.  (*Id.*).

Sarah E. Blake, M.D. treated Plaintiff at Capital City Pain Care on December 12, 2012. (*Id.*).  He reported neck and shoulder pain, burning pain on the left side of his body, and weakness in his left hand.  (*Id.*).  Dr. Blake recommended non-narcotic pain medication, but Plaintiff refused, citing fear of side effects.  (*Id.*).  Plaintiff continued to report shoulder and back pain through March 2013.  (*Id.*).

3

William Bolz, M.D., reviewed the record on June 26, 2011, and completed a residual functional capacity assessment finding that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for almost six hours in an eight-hour workday. (Id. at 6-7). Plaintiff could frequently climb ramps/stairs, balance, kneel and crouch; occasionally stop and crawl; and never climb ladders/ropes/scaffolds. (*Id.* at 7). Dr. Bolz further opined that Plaintiff should avoid all exposure to unprotected heights. (*Id.*).

Gerald Klyop, M.D., reviewed the record on January 5, 2012 and affirmed the assessment of Dr. Bolz. (*Id.*).

## 2. Administrative Decision

After the hearing on February 20, 2013, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (Doc. 10). In addition, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 8, 2011, the alleged onset date. (*Id.*). Finally, the ALJ determined that Plaintiff had the following severe impairments: degenerative disk disease and degenerative joint disease. (*Id.*). Despite these findings, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. ALJ determined, therefore, that Plaintiff was not entitled to benefits. (*Id.*).

## 3. Magistrate Judge's Decision

In his Statement of Errors, the Plaintiff argued that the ALJ's decision should be reversed because: (1) the ALJ failed to consider whether Listing 1.04C was equaled; and (2) the ALJ inadequately evaluated Listings 1.02 and 1.04A which were mentioned in the decision. (Doc.

11).  Plaintiff alleges that at the outset of his administrative hearing, his counsel asserted, "I think that actually, when you look at everything, Mr. Capizzi probably equals Listing 1.04C, yet the administrative decision made no mention of Listing 1.04C.  (*Id.* at 8).

The Magistrate Judge found that the ALJ's evaluation of the evidence and determination that Plaintiff does not meet Listings 1.02A and 1.04A was supported by substantial evidence. The Magistrate Judge also found that the ALJ's failure to state expressly that Listing 1.04C was not met or equaled was not a reversible error because there was substantial evidence in his findings that supported his conclusion that no listing, including Listing 1.04C, was equaled. (Doc. 13).  Accordingly, the Report and Recommendation suggests that the decision of the ALJ was supported by substantial evidence and recommends that his decision should be affirmed. (*Id.* at 17).

## II. STANDARD OF REVIEW

When reviewing the Commissioner's decision, the Magistrate Judge's task is to determine if that decision is supported by "substantial evidence."  42 U.S.C. §405 (g).  This court, upon objection, is required to make a *de novo* determination of those portions of the reports or specific proposed findings or recommendations to which an objection is made. *See*  28 U.S.C. §6369b)(1); *see also* Fed.  R. Civ. P. 72(b).

If the Commissioner's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," then the Commissioner's findings must be affirmed even if the Court would have arrived at a different conclusion.  *Richardson v. Perales.*402 U.S. 389, 402 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984); *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).  If substantial evidence otherwise supports the decision of the Commissioner, but the agency failed to follow a

procedural regulation, then the decision must be reversed even if the outcome on remand is unlikely to be different.  *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir 2004).

### III. ANALYSIS

Plaintiff only raised one objection to the Magistrate's Report and Recommendation: that the ALJ's failure to address whether Mr. Capizzi's impairments equaled Listing 1.04C amounted to a reversible error.  Plaintiff alleges that the ALJ's findings at step three of the sequential evaluation was "procedurally-deficient" and not supported by substantial evidence.  (Doc. 11 at 6).

By way of background, the sequential evaluation process is the series of five steps used to determine whether or not an individual is disabled.  20 C.F.R. §404.1520(a)(4).  On step three, the adjudicator must consider whether the individual's impairment, or combination of impairments, meets one of the listings in Appendix 1 of 20 C.F.R. Part 404, Subpart P (the "Listings of Impairments' or simply "Listings").  *Id.*  If a listing is met or equaled, the individual will be found disabled.  *Id.*

The Listing of Impairments is a description of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  *Evans v. Sec'y of HHS,* 820 F.2d 161, 164 (6th Cir. 1987).  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  *Id.*  In order for a claimant to show that his or her impairment matches a Listing, the impairment must meet all of the specified medical criteria.  *Id.*  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Id.*  A claimant is also disabled, however, if her impairment is the medical equivalent of a Listing, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), which means it is at

6

least equal in severity and duration to the criteria of any listed impairment.  20 C.F.R. §
416.926(a); 20 C.F.R. § 404.1526; *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411,
414-15 (6th Cir. 2011). To determine whether a medical listing is equaled, "[a]n administrative
law judge must compare the medical evidence with the requirements for listed impairments . . . ."
*Reynolds*, 424 F. App'x at 415.

Plaintiff argues that the ALJ's evaluation of the Listing 1.04C did not contain sufficient
analysis to allow for meaningful judicial review because there was no analysis of it at all.  (Doc.
14).  From the beginning of the administrative hearing onward, Plaintiff alleges that he
maintained that his impairments may have equaled Listing 1.04C.  *Id.*  Yet, during the hearing
and in the ALJ's decision, the ALJ only expressly considered Listings 1.02 and 1.04A, two
sections that have very different elements than 1.04C.  (Doc. 13).

Listed Impairment 1.02 requires:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross
anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
instability) and chronic joint pain and stiffness with signs of limitation of motion
or other abnormal motion of the affected joint(s), and findings on appropriate
medically acceptable imaging of joint space narrowing, bony destruction, or
ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or
ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e.,
shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross
movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, §1.02.

In contrast, Listed Impairments 1.04A and 1.04C require:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,
spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral
fracture), resulting in compromise of a nerve root (including the cauda equina) or
the spinal cord. With:

7

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

…

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04.

Because the Plaintiff stated from the outset of the hearing that he may have equaled Listing 1.04C, the ALJ should have articulated why his impairments did not equal the Listing. *Swint v. Commissioner of Social Security,* No. 1:13cv582, 2014 WL 4426246, at *3-5 (S.D. Ohio Sept. 8, 2014) (finding that where plaintiff's counsel contended in opening argument that the plaintiff equaled a specific listing, and the ALJ failed to address whether that listing was in fact equaled, remand was appropriate).  The Magistrate Judge determined that although the ALJ did not state expressly that the requirements of Listing 1.04C were not equaled, there was substantial evidence in the record that supported the conclusion that no Listing was equaled.  (Doc. 13). This Court respectfully disagrees with the Magistrate's analysis, and holds, instead, that the ALJ's complete failure to consider on the record whether Listing 1.04C was equaled amounted to a reversible error.

Plaintiff relies on *Reynolds v. Comm'r of Soc. Sec*, 424 F. App'x 411 (6th Cir. 2011) to support his argument that the ALJ committed a reversible error by failing to consider if his impairment equaled Listing 1.04C.  In that case, the ALJ explained why the claimant's mental impairments did not satisfy the relevant listing criteria, but, other than one conclusory sentence

8

indicating that Reynold's back pain did not meet Listing 1.00, the ALJ provided no explanation as to why such back pain did not meet or equal Listing 1.00.  *Id.* at 415. The court reasoned that "the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review," because, without following such a mandated procedure, "it [was] impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* at 416. Accordingly, the *Reynolds* court reversed the ALJ's decision, finding failure to analyze under step three whether the claimant's physical impairments met or equaled Listing 1.00 was reversible error. *Id.* at 415-16; *see also Copley v. Comm'r of Soc. Sec.*, No. 1:12 CV 1758, 2013 WL 5308383, at *5 (N.D. Ohio Sept. 19, 2013) (finding that because the ALJ's decision lacked adequate explanation of his ruling at step three, remand was necessary); *Andrews v. Comm'r of Soc. Sec.*, No. 12–1311, 2013 WL 2200393, at *11 (E.D. Mich. May 20, 2013) (same); *Bolla v. Commissioner of Soc. Sec.*, 2012 WL 884820, at *6–8 (E.D. Mich. Feb.3, 2012) (same).

In this case, the ALJ failed to discuss Listing 1.04C entirely, and thus did less than the ALJ in *Reynolds*. This failure constituted a reversible error of law, and mandates a remand.

This holding should not be construed as a finding that the Plaintiff's impairments equal Listing 1.04C; indeed, "Plaintiff retains the burden at the third step of the sequential evaluation to establish that she meets or equals a listed impairment." *Swint*, 2014 WL 4426246, at *4 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987)).  This Court holds merely that since the ALJ's decision lacks an adequate explanation of its ruling at step three, the Court cannot determine whether there was a reasonable basis for the ALJ to discredit Plaintiff's evidence and find that his ailments did not equal the listing level. *Copley*, 2013 WL 5308383, at *7.  As a consequence, remand is necessary.

9

Some courts have noted that in *Reynolds* the court found that the claimant had presented evidence from which it was possible to conclude that the requirements of Section 1.04 had been satisfied, and thus have concluded that this may be a threshold showing in order to obtain a remand for failing to comply with the Step Three requirement. *See, e.g., M.G. v. Commissioner of Social Security,* 861 F.Supp.2d 846, 859 (E.D. Mich.); *Neef v. Colvin,* No. 3:12-cv-00120, 2013 WL 1818625 at *1, *8 (S.D. Ohio Apr. 29, 2013); *McClellan v. Astrue,* 804 F.Supp.2d 678 (E.D. Tenn. 2011).

This Court, like the courts in *Swint* and *Risner* declines to apply a harmless error analysis. *Swint*, 2014 WL 4426246, at *4; *Risner v. Comm'r of Soc. Sec.*, No. 1:11-CV-036, 2012 WL 893882, at *5 (S.D. Ohio Mar. 15, 2012). The *Swint* Court determined that the plaintiff's statement during opening argument that she met or equaled the listing at issue was sufficiently specific to require the ALJ to "better articulate why he did not believe her physical limitations met or equaled any listing." *Id.* at *5. In *Risner*, the district court rejected the magistrate judge's determination that any error committed by the ALJ in failing to satisfy step three was harmless because Plaintiff failed to present evidence supporting a finding of meeting or equaling a Listing. It found that

> where, as here, the ALJ fails to complete a required step in the five-step analysis, the proper course is to remand the case for him to complete his task. Requiring a reasoned and explained conclusion [at Step Three] is not merely a formalistic requirement. On the contrary, as noted by the Sixth Circuit, it is a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence. It is not for the Magistrate Judge to step into the shoes of the ALJ and complete his job for him. The ALJ should, in the first analysis, assess whether the evidence put forth shows that Plaintiff meets or equals a Listing. Should he determine she does not, the ALJ must explain his decision with a discussion and analysis of the evidence.

*Risner*, 2012 WL 893882, at *5; *see also Bolla,* 2012 WL 884820, at *6–8 (finding the ALJ's Step Three analysis insufficient, and remand appropriate, in part because the "ALJ's lack of

10

narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact....").

This rule is most prudent considering the highly technical determinations an ALJ must make as fact-finder. For instance, The ALJ found that the Plaintiff suffered from degenerative disk disease and degenerative joint disease, and Listing 1.04C is a sub-Listing for disorders of the spine, which contains medically complex terms, such as "lumbar spinal stenosis," "pseudoclaudication," and "nonradicular." This Court is not positioned appropriately to interpret such terms and apply its interpretations to the facts in the record. It is for exactly this reason that the ALJ must adhere to the five-step sequential evaluation process under 20 C.F.R. §404.1520(a)(4), and thus enable meaningful judicial review of its highly specialized determinations.

This Court follows the rationales in *Swint* and *Risner*, and finds Plaintiff's objection to the Magistrate Judge's Report and Recommendation well taken.  Having so found, upon remand, the ALJ should assess whether the evidence put forth by Plaintiff shows she has an impairment that equals listing 1.04C, and explain any conclusions with adequate medical evidence.

## IV. CONCLUSION

For these reasons, Plaintiff's Objection is hereby **SUSTAINED**.  The Court declines to adopt the Magistrate Judge's **Report and Recommendation**.  The case is **REVERSED** and **REMANDED** to the Commissioner for further proceedings in accordance with the law and this decision.

**IT IS SO ORDERED.**

         ___/s/ Algenon L. Marbley_____
         **ALGENON L. MARBLEY**
         **UNITED STATES DISTRICT JUDGE**

**DATED:  September 1, 2015**